ELECTRONICALLY FILED
2019 Dec 18 2:51 PM
CLERK OF COURT

IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

Abraham Best

    Plaintiff,

vs.                                                 **A Jury Trial is Demanded**

Visible Music College,

    Defendant.

## COMPLAINT

**COMES NOW** Plaintiff, Abraham Best, and asserts the following:

### Parties

1. Plaintiff, at all relevant times, was a resident of Shelby County, Tennessee.

2. Defendant is a private college in Shelby, County, Tennessee.

3. All issues raised occurred in Shelby County, Tennessee.

4. Venue is proper under T.C.A. 20-4-104.

### Facts

5. Although this Complaint uses headings, they are intended to assist the reader only. This Complaint incorporates all Facts and allegations as if restated verbatim, for every heading, and the Complaint is to be read in whole, with all parts inclusive of one another.

6. In August of 2018, Plaintiff was accepted as a student at Defendant College.

7. As part of the terms and conditions of acceptance, Plaintiff and Defendant College entered into a binding, legal, written, contract.

8. Defendant College employed Dr. John Johnson to teach at its school.

9. Dr. John Johnson taught at Defendant College during all relevant times in which these claims arise.

10. In February of 2019, Plaintiff became aware that student Genesis Stackhouse was instructed by Dr. John Johnson to copy directly from Plaintiff's essays and papers that he had written, and to place the content into a document that Dr. Johnson was creating.

11. Dr. Johnson was working on a book, and was using the writings of Plaintiff, and other students, without their permission, and placing their work in a document that was ultimately going to be used for his book.

12. Genesis Stackhouse was specifically told this by Dr. Johnson.

13. Genesis Stackhouse also allowed Plaintiff to see a box with multiple writings from Plaintiff, and other students, and Plaintiff was informed of the process as to how the student writings were being taken and stored into a document for Dr. Johnson's book.

14. This information was also confirmed by Karissa Wolhoff, who was instructed by Dr. Johnson to do the same thing.

15. Plaintiff reported this conduct to Defendant College, through Ben Rawley, the vice president of the business college for Defendant College.

16. Plaintiff also reported this to Cameron Harvey, vice president of academics for Defendant College.

17. Defendant College, through Ben Rawley, stated to Plaintiff that he did not want Plaintiff to tell anyone about what was occurring.

18. At some time between February and March of 2019, Defendant College through Cameron Harvey requested that Plaintiff consider not pursing the issues raised by Plaintiff.

19. This request was also made in front of Defendant College, through Ted Partin.

20. Plaintiff elected to continue to pursue the matter.

21. An investigation was initated.

22. In approximately April of 2019, Plaintiff was thanked by Defendant College for informing them that Dr. Johnson was "mishandling" student papers.

23. Plaintiff challenged the term "mishandling" based on the accusations and the evidence.

24. Plaintiff was informed that Dr. Johnson was given a cease and desist letter, regarding the use of student papers and documents.

25. Plaintiff was asked by Defendant College not to repeat what he knew to anyone.

26. However, students were already discussing what had occurred regarding Dr. Johnson, without receiving the information from Plaintiff.

27. Once this information started to circulate around the campus, student Karissa Wolhof confirmed its accuracy.

28. When Defendant College discovered that Plaintiff was asked about what was occurring, about his work being used, Defendant College expelled Plaintiff on May 24, 2019, with a right to request for re-enrollment in November of 2019.

29. This conduct breached Plaintiff's contract with Defendant College, regarding his rights to appeal punishment.

30. Defendant College breached its contract with Plaintiff by removing him from the school for reporting the improper conduct that was occurring.

31. Defendant College also informed Plaintiff that although he was removed from Defendant College, he should not pursue the matter because it would not help.

## **Breach of Contract**

32. Defendant College and Plaintiff had a contractual agreement as to how Plaintiff and Defendant College were to conduct themselves, and how the investigation and appeal process would work.

33. Defendant College wrongfully removed Plaintiff from the school, after Defendant College became aware that Plaintiff's work was being stolen and plagiarized for Defendant College's benefit, and Plaintiff sought for Defendant College to stop exploiting him.

34. Defendant College elected not to follow the steps as outlined in its contract with Plaintiff, regarding how the investigative process would work, when Defendant College removed witness statements from its investigation report from Karissa Wolhoff, Genesis Stackhouse, and Jessica Gillentine, when Defendant College knew that the statements clearly supported that Plaintiff's work was being stolen, and improperly used by Dr. Johnson, to the benefit of Defendant College.

35. Defendant College breached its contractual agreement with Plaintiff, when it took his money, but then refused to properly teach and educate Plaintiff, and instead, stole his work for its benefit, although it described the theft as a "mishandling" of his property.

36. Defendant College, either directly, or vicariously, is liable for the breaches of contract between Defendant College and Plaintiff.

## Negligence

37. To the extent that Defendant College is contending that Plaintiff's documents were "mishandled," Defendant College, either directly, vicariously, or both, had a contractual duty to protect Plaintiff's work, and to keep it from being exploited, or used improperly

38. Defendant College breached that duty when it allowed Plaintiff's work to be used without his permission, and when Defendant College condoned the conduct which allowed Plaintiff's work to be used improperly.

39. Defendant College's conduct caused and assisted in Plaintiff's work being used improperly.

40. Defendant College caused Plaintiff to then be suspended for exercising his right not to be violated and victimized.

41. Defendant College failed to take any of the proper steps to investigate this matter, nor did Defendant College discipline anyone other than Plaintiff, the victim.

## Negligent and Intentional Infliction of Emotional Distress

42. Defendant College took Plaintiff's tuition, and caused him to incur significant debt, only to improperly remove him, in an attempt to punish him from reporting the improper conduct of a well-liked staff member.

43. Defendant College was also made aware that Plaintiff was being subjected to racist comments being made by its staff, to Plaintiff, which Defendant College condoned, and allowed the staff to continue to work without any repercussions.

44. Defendant College also did not include all of the proper and relevant information in its investigation, in order to protect the image of Defendant College, and expelled Plaintiff to cover up the fact that it was Defendant College who acted inappropriately.

### Fraud

45. Defendant College falsely alleged that Plaintiff acted inappropriately and expelled him, when in reality, the only thing that Plaintiff did was report that his work was being stolen, along with the work of other students, which was found to be true.

46. Defendant College made false representations, or misleading representations in its investigative report, in order to protect its image, and the image of its staff.

47. Defendant College then refused to allow Plaintiff to participate in the appeal process, as outlined in his contract with Defendant College, in order to hide the truth that it was Defendant College who acted improperly.

### Unjust Enrichment

48. Defendant College has improperly expelled Plaintiff based on false allegations.

49. Defendant College knew the allegations to be false.

50. Defendant College did this in part, so that it could receive the benefits of the money that Plaintiff paid as intuition.

51. Defendant College improperly took Plaintiff's work in order to allow Dr. Johnson to work on a book, which would make Defendant College wealth either directly, or indirectly.

52. Any accolades that Dr. Johnson would receive would also benefit Defendant College, since he is a well-known staff member that is employed by Defendant College.

### Defamation and Slander

53. Defendant College, verbally, and in writing, has, and continues to represent to this day, that Plaintiff is, and was expelled based on Plaintiff's improper conduct, and that Plaintiff has behavioral and ethical flaws that has been detrimental to Defendant College.

## Damages

54. As a result of Defendant College's conduct, Plaintiff has lost significant money in the form of tuition.

55. Plaintiff has also experienced severe emotional distress in the form of frustrations, anxiety, stress, and humiliation.

56. Plaintiff has lost significant time and resources attending Defendant College, only to be violated and expelled without just cause.

57. Plaintiff has incurred attorney fees and expenses, and continues to incur these expenses, based on Defendant College's conduct.

WHEREFORE, Plaintiffs respectfully request the following:

    A. An award for compensatory damages to Plaintiff in the amount of $600,000.

    B. An award for punitive damages to Plaintiff in the amount of $1,000,000.

Respectfully submitted,

/s/

TERRELL L. TOOTEN (#028506)
1160 Vickery Ln. Suite #2
Memphis, TN 38016
(901) 304-8539 Phone
(901) 528-8393 Fax